# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KYLE R. W.,[1]                                 )
                                               )
               Plaintiff,                      )
                                               )          **CIVIL ACTION**
v.                                             )
                                               )          **No. 21-2519-JWL**
KILOLO KIJAKAZI,                               )
**Acting Commissioner of Social Security,**    )
                                               )
               Defendant.                      )
_____ )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614, Title II and Title XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.    Background

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff protectively filed applications for DIB and SSI benefits on April 28, 2019.  (R. 15, 240, 243).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erred in finding his condition did not meet Listing 12.06 and in evaluating the medical opinions[2] and as a result the residual functional capacity (RFC) assessment was also erroneous.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see

---

[2] Plaintiff addresses both medical opinions and prior administrative medical findings in his argument respecting medical opinions.  "Prior administrative medical findings" is a term of art referring to the findings of state or federal agency physicians or psychologists about a medical issue at an earlier level of review.  20 C.F.R. § 404.1513(a)(5).  Although the term is broader in scope than a "medical opinion," id. at § 404.1513(a)(2), the terms are often used interchangeably and the court will follow that practice in this case except when necessary to draw a distinction.

also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

Consequently, to overturn an agency's finding of fact the court "must find that the

evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-

Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that

of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala,

36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record,

nor try the issues de novo, nor substitute [the Court's] judgment for the

[Commissioner's], even if the evidence preponderates against the [Commissioner's]

decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in

Bowling)).  Nonetheless, the determination whether substantial evidence supports the

Commissioner's decision is not simply a quantitative exercise, for evidence is not

substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.

Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a

claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136,

1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).

"If a determination can be made at any of the steps that a claimant is or is not disabled,

evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting

Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether

3

claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the errors alleged in Plaintiff's Social Security Brief, beginning with his allegation of error in evaluating the medical opinions.

## II.    Evaluating Medical Opinions

Plaintiff first argues the ALJ erred in evaluating the consultative examination report of Dr. Mintz.  He argues it was error to dismiss the opinion as a one-time examination because every consultative examination report might be dismissed for that

reason.  (Pl. Br. 13-14).  He argues the other rationale relied upon by the ALJ (that Plaintiff's presentation at the examination was exaggerated and not a true reflection of his functioning) was merely the ALJ substituting his own medical judgment for that of Dr. Mintz because Dr. Mintz said nothing about an exaggerated presentation or a true reflection of his functioning.  Id. at 14.

Plaintiff argues it was error for the ALJ to discount Ms. Rasnic's opinions as not supported by her own treatment notes because "[h]er treatment notes consistently comment about the severity of [Plaintiff's] panic disorder with agoraphobia."  Id.  She argues the ALJ's finding Ms. Rasnic "did not document any significant ongoing deficits in his functioning" reveals the ALJ's misunderstanding that Plaintiff's "inability to set foot outside of his house or to ever set [sic] foot inside of a store is simply not an 'ongoing deficit in functioning.'"  Id. 15 (quoting without citation R. 23).  Plaintiff argues it "is simply a false statement" for the ALJ to find Ms. Rasnic's opinion is not supported by the treatment records of other providers.  Id.  He argues Plaintiff's primary care provider, Dr. Jason Foster,[3] noted in his treatment notes that Plaintiff is unable "to leave the house for long periods of time and specifically noted his struggles with panic disorder with agoraphobia."  Id.  He argues, "A psychiatrist, Dr. Hiten Soni, provides even further support for the opinions of Ms. Rasnic, Dr. Foster and Dr. Mintz.  In short, the reasons that the ALJ gives for minimizing the multiple treating source opinions, all of which agree that [Plaintiff] cannot work, are simply wrong."  Id. (citations omitted).

_____

[3] Plaintiff's primary care provider is Dr. Jason William Foster (R. 525), and as Plaintiff points out in his Brief, the ALJ referred to him as Jason Williams, M.D.  (R. 24).

Plaintiff points out the ALJ found all treating source opinions unpersuasive and the single examining source opinion unpersuasive but found the state agency psychologists' opinions persuasive although they "never met the Claimant in person, never examined the Claimant in any fashion, and were able to review only the very early records available in this case." (Pl. Br. 15).  He argues the regulatory factors for evaluating medical opinions do not support the ALJ's evaluation of persuasiveness:

> The "medical expert" to which the ALJ assigned the most weight has NO records which support her opinion, Her [sic] opinion is NOT consistent with any of the treating sources or the medical expert who actually examined the Plaintiff.  She had NO relationship to the Plaintiff and NEVER saw him or examined him at all.  She does NOT specialize in the care and treatment of mental illness, as does Dr. Soni and Gina Rasnic.  In contract [sic], the opinions put forth by Dr. Mintz, Dr. Soni, Dr. Foster, and Gina Rasnic ARE ALL CONSISTENT, they ALL have supportive records to back them up.  Dr. Soni, Gina Rasnic and Dr. Foster ALL have well established relationships with the Plaintiff.  It is beyond dispute that their opinions should have been given MUCH greater weight than that of the State's [sic] reviewing medical expert at the very outset (initial level) of this case.

(Pl. Br. 16).

The Commissioner argues the ALJ properly evaluated the medical opinions.  She argues the ALJ properly found the opinions of the state agency psychological consultants persuasive because they were supported by a review of the record and consistent with the medical record.  (Comm'r Br. 16).  She argues the ALJ properly discounted Dr. Mintz's opinion.  She argues Plaintiff's exaggerated presentation was demonstrated by his presentation at the examination with an oxygen tank and a safety blanket although he did not present to any other appointments with an oxygen tank or a safety blanket, and the opinion was inconsistent with Plaintiff's normal mental examinations.  Id. at 16-17.  She

points out "Dr. Foster's statement that Plaintiff was 'significantly disabled,' and Dr.

Soni's statement that Plaintiff was 'incapacitated and unable to maintain employment'"

are not medical opinions within the meaning of the regulations.  (Comm'r Br. 17) (citing

20 C.F.R. § 404.1513(a)).  Finally, the Commissioner argues the ALJ properly discounted

Ms. Rasnic's opinion because her notes do not document any significant ongoing deficits

in Plaintiff's functioning and because they are inconsistent with Plaintiff's activities of

daily living including caring for his parents.  Id. 17-18.

A.      The ALJ's Relevant Findings

The court quotes here the ALJ's entire discussion of the record evidence regarding

Plaintiff's psychiatric and mental condition:

> The record also fails to fully support the claimant's allegations of disabling
> psychiatric symptoms.  The medical evidence of record does reflect a
> history of treatment for panic disorder with agoraphobia, generalized
> anxiety disorder, and major depressive disorder.  However, the severity and
> limiting effects asserted by the claimant are inconsistent with the evidence
> of record.
>
> The claimant was seen for an examination with his psychiatrist in
> December 2019 (Exhibit 14F, pp. 7-9).  His examination showed normal
> findings except he appeared to be sad and inattentive and he exhibited only
> fair judgment.  Dr. Soni noted that his visit was to treat alcohol abuse.
>
> He was seen for a telehealth examination by Gina Rasnic, NP in July 2020
> (Exhibit 19F, p. 3).  He reported feeling anxious and not leaving his house.
> NP Rasnic noted that he appeared anxious and he had signs of anxiety.
> However, other findings were normal.  NP Rasnic saw him for a follow up
> examination in August 2020 (Exhibit 20F).  She documented that his
> examination revealed no serious mental status abnormalities.  He exhibited
> neither depression nor mood elevation.  His speech was normal.  He denied
> any suicidal ideations. He did not exhibit any evidence of psychosis.  His
> thought processes were logical and goal directed.  He exhibited no signs of
> anxiety.  He exhibited a normal attention span.  He was continued on
> Sertraline and Diazepam (Exhibit 20F, p. 5).

I note that the claimant was seen for a consultative examination conducted by Stanley Mintz, Ph.D. in August 2019 (Exhibit 8F). However, his presentation appears to be exaggerated during this examination. He presented with a blanket and oxygen tank to help him stay calm. However, these items were never mentioned in any other examination he underwent. While Dr. Mintz noted some abnormalities, they appear to be based on the claimants [sic] exaggerated behavior and not on his true functioning.

In summary, the claimant's allegations are out of proportion with the medical and other evidence of record. I note that the symptoms and difficulties the claimant has described to his treatment providers are generally consistent with his testimony and other reports throughout the record. However, other than his subjective reports, there is little evidence to support the severity and degree of limitation the claimant asserts. As previously noted, mental status examinations have not revealed a pattern of significant cognitive deficits, nor has any of the claimant's providers or other examiners documented a pattern of objective findings or observations that the claimant is overly anxious or has any serious difficulty interacting or communicating with others. His providers generally noted some mild to moderate anxiety and some difficulty with insight and judgment. However, other abnormalities such as panic attacks or significant difficulty interacting were not noted. He did not exhibit any psychosis or suicidal ideations. As noted above, he exhibited several deficits during the consultative examination but they do not appear to be a true reflection of his functioning. Additionally, the level of treatment he has required is not reflective of him having disabling limitations. He received some therapy and medication management on a regular basis. However, these are the only treatment modalities he required. He did not require any type of inpatient care for a mental health crisis. Nor did he require any type case management [sic]. Thus, the evidence as a whole does not reflect signs and symptoms of a severity to preclude realistic thinking, adequate focus for simple tasks or appropriate interaction on a limited basis.

Despite his allegations of disabling limitations the record indicates that the claimant is able to engage in numerous activities of daily living. Her [sic] can cook and clean. He can spend time with his family. He can spend time with his girlfriend. He is able to care for his hygiene. Overall, the claimant's descriptions of his daily activities are essentially normal. His activities are not limited to the extent one would expect, given the complaints of disabling symptoms and limitation that preclude him from work activities. Although the claimant may not be able to engage in all of the activities that he did in the past and it may take him longer to perform

the tasks, he is more active than would be expected if all of his allegations were consistent with the record.

(R. 22-23).

The court also quotes the ALJ's evaluation of the medical opinions relevant to

Plaintiff's mental condition:[4]

> The opinions of Gina Rasnic, APRN, are found to not be [sic] persuasive (Exhibit 15F, 22F). Her opinions are not supported by her own treatment records. As detailed above, she did not document any significant ongoing deficits in his functioning. They are also not supported by the treatment records of other providers. As detailed above, his psychiatrist and primary care provider did not document significant deficits in his mental health functioning. They are also not consistent the fact [sic] he can engage in numerous activities of daily living including providing care for his parents. Additionally, they are inconsistent with the level of treatment he has required as he did not require any significant ongoing treatment for his impairments.
>
> Hilten Soni, M.D. opined that the claimant could not work (Exhibit 12F, p. 7). This opinion is found to not be [sic] persuasive for the following reasons. An opinion of whether someone cannot work is a decision to be made by the Commissioner of Social Security. Additionally, this opinion is not supported by his own treatment records. As noted above, he did not document significant deficits in the claimant's mental health functioning. Furthermore, these opinions are inconsistent with the treatment notes of other providers. Again, his other providers did not document significant deficits in his functioning. Additionally, this opinion is inconsistent with the level of treatment he has undergone as the fact he has required limited treatment suggests he is not significantly limited by his impairments.
>
> Jason [Foster], M.D. opined that the claimant was significantly disabled (Exhibit 9F, p. 10). This opinion is found to not be [sic] persuasive as it is not supported by the record that shows few deficits in his functioning. This

---

[4] Plaintiff appears to complain that the state agency medical consultant at the initial consideration (Dr. Sarah Landers) (R. 86) is the medical expert to whose opinion the ALJ accorded the most weight. (Pl. Br. 19). However, because the state agency medical consultants did not opine with respect to Plaintiff's mental abilities, the court does not include the ALJ's evaluation of their opinions here.

opinion is a conclusory statement that does not provide any functional analysis of his limitations.

The opinions of Dr. Mintz are found to not be [sic] persuasive (Exhibit 8F). These opinions are based on his one time examination of the claimant. As noted above, his presentation at this examination appeared to be significantly exaggerated and not a true reflection of his functioning. These opinions are inconsistent with the level of treatment he has required and with the mental status examinations from his other providers.

\* \* \*

The opinions of the state agency psychological consultants are found to be persuasive (Exhibits 3A, 4A, 5A, 6A). They are supported by a detailed narrative explaining the evidence relied on in making the determination. They are consistent with the moderate level of treatment he has required. They are consistent with the mental status examinations contained in the record that showed few deficits in his functioning. They are also consistent with the fact he is able to engage in numerous activities of daily living, which shows he can complete tasks and have social interaction.

(R. 23-24).

### B.    Analysis

The court finds no error in the ALJ's evaluation of the medical opinions in this case. As Plaintiff acknowledges in his Brief, the Commissioner abrogated the treating physician rule through notice and comment rulemaking when promulgating 20 C.F.R. §§ 404.1520c and 416.920c. An ALJ no longer assigns relative weight to medical opinions based upon treating relationships but assesses the <u>persuasiveness</u> of each provider's opinions based on consideration of five regulatory factors—(1) supportability; (2) consistency; (3) relationship with the claimant (length of treatment relationship, frequency of examinations; purpose and extent of treatment relationship, and examining relationship); (4) specialization; and (5) other factors tending to support or contradict a

medical opinion—of which the most important and the ones for which the ALJ's consideration must be explained are supportability and consistency.  20 C.F.R. §§ 404.1520c, 416.920c.

The ALJ found Dr. Mintz's opinions are not persuasive because (1) they are based on a one-time examination, (2) Plaintiff's presentation at the examination was "significantly exaggerated and not a true reflection of his functioning," (3) the opinions are inconsistent with Plaintiff's required level of treatment and (4) are inconsistent with the mental status examinations from other providers.  (R. 24).

Plaintiff objects to reason one because that could be said of every consultative examination.  That is true, but it is also a reason to be cautious of every consultative examination.  Moreover, the ALJ provided three other reasons to discount the persuasiveness of Dr. Mintz's opinions.  Plaintiff objects to reason two because Dr. Mintz did not find Plaintiff's presentation exaggerated or that it was not a true reflection of his functioning, and he implies the ALJ substituted his medical opinion for that of Dr. Mintz. The ALJ was not making a medical judgment with respect to Plaintiff's presentation, he was making a judicial determination—and he explained the basis for that determination. He noted that at Dr. Mintz's examination Plaintiff "presented with a blanket and oxygen tank to help him stay calm.  However, these items were never mentioned in any other examination he underwent."  (R. 22).  Dr. Mintz was unaware of Plaintiff's presentation at any other provider's office.  When Plaintiff came into Dr. Mintz's office, he wore a portable oxygen device and brought a "safety blanket" in with him.  (R. 514).  He told Dr. Mintz he had panic attacks with agoraphobia, his parents "had to coach him" to go

11

from the parking lot into the office, and "he had to drink alcohol before coming to see" Dr. Mintz.  (R. 514).  He also told Dr. Mintz "the purpose of the oxygen is to help him relax."  Id. at 515.  Dr. Mintz, not know all the facts, and being told Plaintiff had panic attacks with agoraphobia, bringing a safety blanket and oxygen without knowing it had not been done before did not suggest an exaggerated presentation.  But it was reasonable for the ALJ, seeing all the evidence, to infer an exaggerated presentation and an untrue reflection of Plaintiff's functioning.  Plaintiff does not object to the other two reasons to discount the persuasiveness of Dr. Mintz's opinions and the court finds they are supported by the evidence.

The ALJ found Ms. Rasnic's opinions not to be persuasive because they are not supported by her own treatment notes or by the treatment notes of Plaintiff's psychiatrist and primary care provider, in that none of them documented any significant ongoing deficits in functioning.  (R. 23).  He also found her opinions inconsistent with Plaintiff's numerous activities of daily living or with the level of treatment he has received.  Id. Plaintiff argues this is error because Ms. Rasnic consistently commented about the severity of his panic attacks, his agoraphobia, and his inability to leave his house or go into a store and he implies the ALJ's finding no significant ongoing deficits in functioning fails to recognize these comments as demonstrating significant deficits in functioning.  However, Plaintiff's argument misunderstands both the treatment notes and the meaning of the term "deficits in functioning."  As the ALJ recognized, Ms. Rasnic's treatment notes record that Plaintiff "reported feeling anxious and not leaving his house," and she noted that he appeared anxious and had signs of anxiety but the ALJ pointed out,

"other findings were normal." (R. 22) (citing Ex. 19F, p.3, R. 586).  As the ALJ

suggested, "Feeling more anxious" and "fears leaving his home" were Plaintiff's report

of his "INTERVAL HISTORY" to Ms. Rasnic in a telehealth exam in July 2020 (R.

586), and Ms. Rasnic's "EXAM" findings showed "signs of anxiety" but were otherwise

normal:

> [Plaintiff] appears friendly, happy, attentive, communicative, casually
> groomed, normal weight, but tense.  He exhibits speech that is normal in
> rate, volume, and articulation and is coherent and spontaneous.  Language
> skills are intact.  Mood presents as normal with no signs of either
> depression or mood elevation.  Affect is appropriate, full range, and
> congruent with mood.  Associations are intact and logical.  There are no
> apparent signs of hallucinations, delusions, bizarre behaviors, or other
> indicators of psychotic process.  Associations are intact, thinking is logical,
> and thought content appears appropriate.  Suicidal ideas or intent are
> denied.  Cognitive functioning and fund of knowledge are intact and age
> appropriate.  Short- and long-term memory are intact.  This patient is fully
> oriented.  Vocabulary and fund of knowledge indicate cognitive functioning
> in the normal range.  Insight into problems appears fair.  Judgment appears
> fair.  There are signs of anxiety.  There are no signs of hyperactive or
> attentional difficulties.  [Plaintiff]'s behavior in the session was cooperative
> and attentive with no gross behavioral abnormalities.

(R. 586-87) (emphases added).  The ALJ noted that at a follow-up examination in August

2020 Plaintiff exhibited no signs of anxiety and "no serious mental status abnormalities:"

> Examination of [Plaintiff] reveals no serious mental status abnormalities.
> His appearance, dress, and grooming are unremarkable and age appropriate.
> He exhibits neither depression nor mood elevation.  His speech is normal in
> rate, volume and articulation and his language skills are intact.  Suicidal
> and self injurious ideas or intentions are denied.  Assaultive or homicidal
> ideas or intentions are also convincingly denied.  Hallucinations and
> delusions are not present and his behavior is generally appropriate.
> Associations are intact, thinking is basically logical, and thought content is
> appropriate.  There are no signs of cognitive difficulty, based on vocabulary
> and fund of knowledge.  Memory is intact for recent and remote events and
> he is oriented to time and place.  There are no signs of anxiety.  A normal

attention span is in evidence and there are no signs of hyperactivity.
Judgment and insight appear intact.

(R. 22) (citing Ex. 20F, R. 608) (emphases added).  As Plaintiff argues, Ms. Rasnic commented about his panic disorder with agoraphobia, but as the ALJ found Ms. Rasnic's treatment notes do not document significant ongoing deficits in <u>functioning</u>— they do not document actual deficits in functioning as demonstrated by any actual deficits noted at an office visit other than signs of anxiety.

Similarly, the ALJ found the treatment notes of Plaintiff's primary care physician (Dr. Foster, called Dr. Williams by the ALJ (<u>see</u>, <u>supra</u> p.9,n.4)), did not support Ms. Rasnic's opinion because he "did not document significant deficits in [Plaintiff's] mental health functioning."  (R. 22).  Although Dr. Foster opined that Plaintiff was significantly disabled by his conditions being treated by a psychiatrist (R. 525), reported he very seldom leaves his house and has to be inebriated to leave his house, <u>id.</u> at 522, the ALJ found that opinion not supported by the record.  (R. 24).  Repeating the patient's reports of difficulties is not documenting deficits in <u>functioning</u>.  Moreover, on examination, Dr. Foster found: "Psychiatric: Alert and oriented.  Denies thoughts of harming self or others," thereby as found by the ALJ, not documenting significant deficits in mental health functioning.  (R. 524).

Plaintiff's appeal to Dr. Soni's treatment notes as supporting the other medical opinions is similarly unavailing.  Although Dr. Soni wrote a letter stating Plaintiff "is currently incapacitated and unable to maintain employment" (R. 543) and provided a diagnosis of "Agoraphobia with panic disorder," <u>id.</u> at 552, his treatment notes do not

14

document deficits in mental health functioning.  The only mental status examination

provided by Dr. Soni states:

> Kyle presents as sad looking, inattentive, but relaxed.  He exhibits speech
> that is normal in rate, volume, and articulation and is coherent and
> spontaneous.  Language skills are intact.  Mood presents as normal with no
> signs of either depression or mood elevation.  Affect is appropriate, full
> range, and congruent with mood.  Associations are intact and logical.
> There are no apparent signs of hallucinations, delusions, bizarre behaviors,
> or other indicators of psychotic process.  Associations are intact, thinking is
> logical, and thought content appears appropriate.  Homicidal ideas or
> intentions are denied.  Cognitive functioning and fund of knowledge are
> intact and age appropriate.  Short-and long-term memory are intact, as is
> ability to abstract and do arithmetic calculations.  This patient is fully
> oriented.  Vocabulary and fund of knowledge indicate cognitive functioning
> in the normal range.  Insight into problems appears fair.  Judgment appears
> fair.  <u>There are no signs of anxiety</u>.  There are no signs of hyperactive or
> attentional difficulties.  Kyle's behavior in the session was cooperative and
> attentive with no gross behavioral abnormalities.

(R. 552) (emphasis added).  Other than his stated opinion of incapacity, Dr. Soni's

treatment records provide little, if any, support to the other psychological opinions.

As Plaintiff acknowledges, the ALJ found the opinions of the state agency

psychological consultants persuasive.  (R. 24).  He gave four reasons for doing so:  They

are supported by a detailed narrative explaining the evidence relied upon and they are

consistent with the moderate level of treatment Plaintiff required.  "They are consistent

with the mental status examinations contained in the record [(and quoted hereinbefore)]

that showed few deficits in his functioning," and they are consistent with the numerous

activities of daily living showing he can complete tasks and have social interaction.  <u>Id.</u>

Plaintiff is correct that the consultants never met or examined him but he is wrong to

assert they reviewed "only the very early records available in this case."  (Pl. Br. 15).  Dr.

McRoberts signed the initial determination on December 3, 2019 and he reviewed the medical records through Exhibit 10F.  Dr. Kasper signed the reconsideration determination on August 31, 2020 and reviewed the medical record through Exhibit 20F.  Thus, the only medical records not reviewed by the state agency consultants were Exhibits 21F and 22F, the records of one office visit with Ms. Rasnic and the second opinion letter provided by her.  The mental status examination results recorded in Exhibit 21F (R. 613) is verbatim identical to the results recorded in Ms. Rasnic's treatment notes for the visit in August 2020 and quoted supra, p. 13.  The record supports the ALJ's reasons for finding the state agency psychological consultants' opinions persuasive, and Plaintiff has not demonstrated otherwise.

Plaintiff's argument about the medical expert to whom the ALJ allegedly assigned the most weigh (quoted supra p.6) is irrelevant here.  It appears to be discussing the state agency medical consultant at the initial consideration, Dr. Sarah Landers (R. 86), as she is the only state agency consultant in the record who is a female.  However, Dr. Landers is a medical consultant and did not opine with respect to Plaintiff's mental condition or mental abilities.  Moreover, although Dr. Mintz, Dr. Soni, Dr. Foster, and Ms. Rasnic all stated their opinion that Plaintiff is disabled, the ALJ explained why he found those opinions unpersuasive and his explanations are supported by the record evidence.  The fact these providers each had a closer relationship with Plaintiff than did the consultants cannot, by itself, serve to make an unpersuasive opinion persuasive.

**III.    Listing 12.06**

Plaintiff claims his condition meets or medically equals Listing 12.06 for panic disorder or agoraphobia.  (Pl. Br. 10).  He argues he has a disproportionate fear or anxiety of being in or around crowds and of being outside his home thereby satisfying the criteria of Listing 12.06A2b.  (Pl. Br. 10).  He argues the paragraph B criteria of the Listing are also met.  He argues, he "clearly has a marked or extreme limitation in his ability to interact with others, as evidenced by the fact that he rarely, if ever, sets foot outside of his house and the only individuals with whom he has interacted at any level are his parents and his girlfriend," id., "he clearly has great difficulty with concentration, persistence or pace," and he "clearly has a marked or severe impairment in his ability to adapt or manage himself."  Id. at 11.  Plaintiff argues his condition also meets the paragraph C criteria of the Listing because he has been treated for this condition for more than two years and "he lives his life in a highly structured setting in which he rarely, if ever, sets foot outside of his home (and must be sedated if/when he does) and would have no more than a marginal capacity to adapt to changes in that environment or to demands which are not already part of his daily life."  Id. at 11-12.

Plaintiff concludes by arguing:

In short, this Claimant meets every requirement of listing 12.06 and virtually every treating or [examining] medical source opinion (Dr. Mintz, Dr. Soni, Dr. Foster, and Gina Rasnic, APRN, PMHNP) concurs that [Plaintiff] would be disabled due to his mental impairments.  The ALJ chose to ignore virtually every shred of meaningful medical opinion, and chose instead to find "persuasive" only the opinion of the State's reviewing physician at the initial level of this case.

Id. at 12.

The Commissioner argues the record evidence supports the ALJ's finding the criteria of Listing 12.06 are not satisfied.  She argues the record evidence supports the ALJ's finding Plaintiff has no more than a moderate limitation in the Paragraph B criteria of interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  (Comm'r Br. 12-13).  She argues the Paragraph C criteria are not met because although Plaintiff alleges he is unable to leave the house, the evidence in that respect is equivocal, the state agency psychological consultants found Plaintiff's condition does not meet the Paragraph C criteria, and therefore the evidence supports the ALJ's finding in that respect.  Id. at 13.

### A.    Step Three Standard

The Commissioner has provided a "Listing of Impairments" which describes certain impairments that she considers disabling.  20 C.F.R. §§ 404.1525(a), 416.925(a); see also, Pt. 404, Subpt. P, App. 1 (Listing of Impairments).  If a claimant's condition meets or equals the severity of a listed impairment, that impairment is conclusively presumed disabling.  Williams, 844 F.2d at 751; see Bowen v. Yuckert, 482 U.S. 137, 141 (1987) (if claimant's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled").  However, the claimant "has the burden at step three of demonstrating, through medical evidence, that his impairments 'meet all of the specified medical criteria' contained in a particular listing."  Riddle v. Halter, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in Zebley).  "An impairment that

manifests only some of [the listing] criteria, no matter how severely, does not qualify" to meet or equal the listing.  Zebley, 493 U.S. at 530.

"The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard.  The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" Zebley, 493 U.S. at 532-33 (emphasis in original) (citing 20 C.F.R. § 416.925(a) (1989)). The listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background."  Yuckert, 482 U.S. at 153.  "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively."  Caviness v. Apfel, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

### B.      The ALJ's Relevant Step Three Findings

The ALJ's step three finding regarding Plaintiff's mental impairments was:

The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.15.  In making this finding, I have considered whether the "paragraph B" criteria are satisfied.  To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning.  An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis.  A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.

In understanding, remembering or applying information, the claimant has a moderate limitation.  He has not exhibited significant deficits in his memory functioning.  He has not exhibited deficits in his insight and judgment.

In interacting with others, the claimant has a moderate limitation. The claimant is able to interaction [sic] appropriately with his health care providers. He is able to spend time with his girlfriend. He is able to provide care for his parents.

With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. The claimant can concentrate to perform household chores. He can concentrate to drive.

As for adapting or managing oneself, the claimant has experienced a moderate limitation. The claimant continues to maintain his own self-care tasks and grossly normal activities of daily living. The record does not support episodes of significant emotional dysregulation or decompensation.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

I have also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The "paragraph C" criteria for listings 12.04, 12.06 and 12.15 call for a medically documented history of an applicable mental disorder of at least two-years' duration that has caused more than a minimal limitation of the ability to do basic work activities and evidence of both medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of one's mental disorder; and marginal adjustment, that is minimal capacity to adapt to changes in one's environment or to demands that are not already part of one's daily life. In this case, the claimant has not shown any evidence that satisfies the requirement for marginal adjustment.

(R. 18-19).

### C.      Analysis

The ALJ found the Paragraph C criteria are not met because Plaintiff "has not shown any evidence that satisfies the requirement for marginal adjustment." Id. 19. The regulations define the requirements for finding a claimant has achieved only marginal adjustment:

"Marginal adjustment" means that your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.  We will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports (see 12.00D).  Such deterioration may have necessitated a significant change in medication or other treatment.  Similarly, because of the nature of your mental disorder, evidence may document episodes of deterioration that have required you to be hospitalized or absent from work, making it difficult for you to sustain work activity over time.

20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00G2c.

Plaintiff argues that he lives "in a highly structured setting in which he rarely, if ever, sets foot outside of his home (and must be sedated if/when he does)," thereby satisfying the Paragraph C criteria.  (Pl. Br. 11).  Plaintiff cites no record evidence demonstrating a requirement to be sedated when he leaves home, and the court finds none.  The court perceives Plaintiff as arguing an inability to leave his home without substantial psychosocial supports.  The regulations also define psychosocial supports:

1. General. Psychosocial supports, structured settings, and living arrangements, including assistance from your family or others, may help you by reducing the demands made on you.  In addition, treatment you receive may reduce your symptoms and signs and possibly improve your functioning, or may have side effects that limit your functioning.  Therefore, when we evaluate the effects of your mental disorder and rate the limitation of your areas of mental functioning, we will consider the kind and extent of supports you receive, the characteristics of any structured setting in which you spend your time, and the effects of any treatment.  This evidence may come from reports about your functioning from you or third parties who are familiar with you, and other third-party statements or information.  Following are some examples of the supports you may receive:

a. You receive help from family members or other people who monitor your daily activities and help you to function. For example, family members administer your medications, remind you to eat, shop for you and pay your bills, or change their work hours so you are never home alone.

b. You participate in a special education or vocational training program, or a psychosocial rehabilitation day treatment or community support program, where you receive training in daily living and entry-level work skills.

c. You participate in a sheltered, supported, or transitional work program, or in a competitive employment setting with the help of a job coach or supervisor.

d. You receive comprehensive "24/7 wrap-around" mental health services while living in a group home or transitional housing, while participating in a semi-independent living program, or while living in individual housing (for example, your own home or apartment).

e. You live in a hospital or other institution with 24–hour care.

f. You receive assistance from a crisis response team, social workers, or community mental health workers who help you meet your physical needs, and who may also represent you in dealings with government or community social services.

g. You live alone and do not receive any psychosocial support(s); however, you have created a highly structured environment by eliminating all but minimally necessary contact with the world outside your living space.

20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00D.

Plaintiff does not receive any of the types of supports identified in 12.00D1(a-f) quoted above. Therefore, his contention must be that he has "created a highly structured environment by eliminating all but minimally necessary contact with the world outside [his] living space." 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00D1g. While there is record evidence to support that contention, the ALJ found otherwise and the record evidence supports his finding. Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding

22

will not establish error in the ALJ's determination.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

As the court found above, the ALJ appropriately discounted the opinions of the treating and examining medical sources and found the opinions of the state agency psychological consultants persuasive.  As quoted supra pp. 7-8, the ALJ explained his evaluation of Plaintiff's allegations of symptoms and found them inconsistent with and unsupported by the record evidence.   He found, "other than his subjective reports, there is little evidence to support the severity and degree of limitation the claimant asserts." (R. 22).  He concluded, "the evidence as a whole does not reflect signs and symptoms of a severity to preclude realistic thinking, adequate focus for simple tasks or appropriate interaction on a limited basis."  Id.  The court's review of the ALJ's evaluation of Plaintiff's allegations of symptoms confirms that it is supported by the record evidence and Plaintiff has not even made an argument otherwise.

Plaintiff also argues that his condition meets the Paragraph B criteria of the Listing.  As the ALJ noted in his decision, an extreme limitation in a functional area constitutes the inability to function in that area.  (R. 18), see also, 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00F2e ("Extreme limitation. You are not able to function in this

23

area independently, appropriately, effectively, and on a sustained basis.").  Although Plaintiff suggests he may have an extreme limitation in his ability to interact with others, he does not establish an inability to do so.  In his Brief, he asserts "the only individuals with whom he has interacted at any level are his parents and his girlfriend" (Pl. Br. 10), but he testified at the hearing that he is "basically an at - home caretaker" for his parents (R. 41) and the record shows interaction with his minor son (and presumably his son's mother), his brother, and several treating or examining healthcare providers and staff.  On that basis the record shows, at least, that Plaintiff is able to interact independently, appropriately, effectively, and on a sustained basis with his parents, thereby precluding a finding of an extreme limitation.

Despite the ALJ's finding moderate limitations in each of the four broad mental functional areas, Plaintiff argues he is markedly limited in two or all three of the areas of interacting with others; concentrating, persisting or maintaining pace; or adapting or managing himself because he alleges his panic disorder with agoraphobia precludes him from leaving his house, going to a store, going to work, or interacting with others and because several medical sources have opined he is disabled.  The problem is the ALJ found Plaintiff's allegations of symptoms are not consistent with or supported by the record evidence and the opinions on which Plaintiff relies are not persuasive, and Plaintiff does not point to record evidence which compels a contrary finding.

## IV.   Residual Functional Capacity

Plaintiff's claim the ALJ erred in assessing RFC is based upon the same allegations as the earlier arguments—that his panic disorder with agoraphobia precludes

him from leaving his house, going to a store, going to work, or interacting with others.

He argues,

> the ALJ ignores the elephant in the room. … If a person cannot leave his house, he cannot go to work.  If a person cannot leave his house, he cannot perform any sort of work tasks, whether they be repetitive or not.  If a person lacks the ability to focus and concentrate well enough to drive a car, he very likely lacks the capacity to focus and concentrate well enough to remain on task for two hour segments of time over the course of an eight hour workday.

(Pl. Br. 17-18).  This argument fails for the same reasons discussed in the previous section—the ALJ found otherwise and Plaintiff has not shown error in that finding.  The court will not repeat its analysis here.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated February 10, 2023, at Kansas City, Kansas.




                              s/ John W. Lungstrum
                              **John W. Lungstrum**
                              **United States District Judge**

25